UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:15-cv-00468-MOC

| | |
|---|---|
| **LAVONTE LAMONT HALLMAN,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| Vs. ) | MEMORANDUM OF DECISION |
| ) | AND ORDER |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |

**THIS MATTER** is before the court on the petitioner's Motion to Vacate, Set Aside, or Correct Sentence, the government's Response, which contains a Motion to Dismiss, and the petitioner's timely-filed Reply. Having considered those pleadings and relevant pleadings and transcripts in the underlying criminal action, United States v. Hallman, 3:12cr 97 (W.D.N.C.) (hereinafter "Hallman"), the court enters the following Memorandum of Decision granting the Motion to Dismiss, dismissing the Petition, and denying in part and granting in part a certificate of appealability.

**FINDINGS AND CONCLUSIONS**

**I.  Background**

Defendant robbed an O'Reilly's Auto Parts Store in Charlotte, North Carolina, in 2011, at gunpoint. Hallman, PSR (#57) at 4. During the robbery, petitioner pointed a gun at two store employees and demanded cash from the register, all while a store customer looked on. Id. Petitioner told the employees that they had ten seconds to open the drawer and began counting

down from ten. The employees placed $336 into a bag and petitioner escaped in a white Mercury Marquis. Id.

Police intercepted petitioner, who was a passenger in the white sedan. When approached by the police, he refused to show his left hand, which was pressed under his left leg. When ordered out of the car, defendant fled into the woods abandoning the bag of cash and, eventually, the gun. Id. at 4-5; Trial Transcript. When he encountered a fence, he was apprehended by the police after a struggle. At trial, the two store employees identified petitioner as the person who had robbed the store and the police officer identified petitioner as the person he encountered in the white sedan.

Petitioner was charged in this court and, after a jury trial, was convicted on four offenses: robbery by force or violence under the *Hobbs Act*, 18 U.S.C. § 1951; conspiracy to commit robbery, 18 U.S.C. § 1951; use and carriage of a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c); and possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1). Id. at 1, 4. Despite being a career offender, id. at ¶ 26, and having an advisory guidelines range of between 360 months to life imprisonment, this court varied downward and sentenced petitioner to a below-guidelines sentence of 294 months. Throughout the proceedings, petitioner was ably represented by Haakon Thorsen.[1]

## II.    Petitioner's Contentions

After the petition was filed, the court conducted an initial screening and determined that petitioner had alleged the following claims:

---

[1] Not only does the court recall counsel's advocacy at trial, the court also recalls the thorough job Mr. Thorsen did for petitioner in pretrial proceedings, which including filing a Motion to Dismiss for lack of Jurisdiction, a Motion to Suppress, an *Old Chief* Stipulation (which foreclosed the government from putting on evidence of petitioner's prior conviction), a Motion to Strike Surplusage, proposed Voir Dire questions, proposed Jury Instructions, a Motion in Limine as to Rule 404(b) Evidence, and a Witness List. After trial, counsel filed Objections to the PSR, a Motion for Downward Variance, and secured a sentence substantially below the advisory guidelines. Post sentence, counsel noticed a timely appeal and pursued four claims before the Fourth Circuit, albeit unsuccessfully.

> I. **Petitioner was Denied Effective Assistance of Counsel at Trial and During Sentencing;**
>
> II. **Petitioner was Improperly Classified as a Career Offender in Light of the Supreme Court's Decision in <u>Johnson v. United States</u>, ___ U.S. ___, 135 S.Ct. 2551 (2015).**

Order (#2). The court will discuss petitioner's contentions and the arguments *seriatim*.

### III. Discussion

#### A. Ineffective Assistance of Counsel: Applicable Standard

##### 1. Applicable Standard

To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation. <u>Strickland v. Washington</u>, 466 U.S. 687, 687-91 (1984). In order to satisfy the performance prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." <u>Id.</u>, at 687-88. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. <u>Id.</u>, at 689; <u>see</u> <u>also</u> <u>Fields v. Attorney Gen. of Md.</u>, 956 F.2d 1290, 1297-99 (4th Cir. 1992). The prejudice prong is satisfied by showing that

> there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

<u>Id.</u>, at 694. The petitioner "bears the burden of proving <u>Strickland</u> prejudice." <u>Fields</u>, 956 F.2d at 1297 (citation omitted). If the petitioner fails to meet this burden, a reviewing court need not consider the performance prong." <u>Id.</u>, at 1290, <u>citing</u> <u>Strickland</u>, 466 U.S. at 697. In considering the prejudice prong of the analysis, the court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome would have been different. <u>Sexton v.</u>

French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999). Rather, the court "can only grant relief under ... Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364 U.S. 364, 369 (1993).

### 2. Counsel Provided Effective Representation at Trial

#### a. Leg Restraints

Petitioner first contends that his attorney was ineffective for not objecting to his wearing leg restraints during trial. In his Reply, petitioner speculates that the entire jury venire may have been able to see his restraints during jury selection, but he offers no proof that any member of the jury panel ever saw his leg restraints and cites no point in the trial transcript where any such incident occurred.

The court notes from the outset that, as a matter of security procedures implemented by the United States Marshal, all defendants who are in custody wear leg restraints at all proceedings. They do not, however, wear arm restraints at trial. All defendants wear civilian clothes of their own choosing during trial. Both the government's table and the defendant's table are draped with black curtains around the base on three sides, thereby making no distinction by only draping one table. Further, in-custody defendants are never moved in front of the jury and where, as here, the defendant testifies, the jury is brought in and taken out only when the defendant is seated in the witness box where his or her leg restraints are equally hidden. In this case, the court allowed defendant to be sworn before the jury arrived and the court advised that the witness has already been sworn, which was a believable scenario inasmuch as the jury had been advised before the recess that the court would be taking up some matters while they were out. Hallman, Trial transcript (#87) at 381. These standard and regular practices, as well as procedure for swearing in


a defendant who desires to testify, ensures that in-custody defendants are from the jury's perspective treated no differently than any other witness. See United States v. Midgett, 488 F.3d 288, 298 (4th Cir. 2007).

As to petitioner's contention that counsel should have requested that his leg restraints be removed during trial, there simply was no likelihood of any success on that motion inasmuch as defendant stood accused of committing a crime of violence, had a history of committing crimes of violence, and had a history of absconding inasmuch as he actually fled from police and then resisted when they attempted to place him in custody. As the defense history of the underlying criminal action indicates (as noted above), Mr. Thorsen had no trouble making substantive motions when he believed that the motion had some possibility succeeding. He had absolutely no duty, however, to make a motion that any seasoned federal practitioner would know would be denied. See Chandler v. United States, 218 F.3d 1305, 1318 (11th Cir. 2000) ("Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others."). Indeed, after the 2005 Atlanta courthouse slayings that occurred when a defendant, also in pretrial custody and on trial for crimes of violence, was temporarily released from restraints to change into street clothes, the importance of restraints to protect the court and the public (and ultimately the defendant) cannot be overemphasized.

As to petitioner's assertion that the jury venire could have seen the restraints, the court notes that the procedures in place to prevent disclosure during trial are also in place during jury selection. Here, petitioner offers no proof that any juror or potential juror ever saw him in restraints and this court does not recall any instance during the trial -- and none is noted in the trial transcript -- of any inadvertent display of his leg restraints. Indeed, had such occurred the court would have

declared a mistrial. This contention is, therefore, without merit.

### b. Testimony of an In-Custody Defendant

Next, petitioner contends that counsel provided constitutionally deficient representation at trial when he allowed him to be sworn outside the presence of the jury. As the transcript reveals, it was this court's suggestion that defendant be sworn outside the presence of the jury to ensure that his leg restraints were not seen by the jury. <u>Hallman</u>, Trial Transcript (#87) at 385.

Review of the Trial Transcript reveals that, to ensure that defendant was knowingly waiving his Fifth Amendment right not to testify, the court first questioned petitioner outside the presence of the jury, concerning his decision to testify. This discussion naturally led to a discussion concerning procedures to conceal his custodial status, as follows:

> THE COURT: Okay. And you've had a chance to sufficiently talk to your attorney about the pros and cons of that and you want to get up here and tell your side of the story; is that right?
>
> THE DEFENDANT: Yeah.
>
> THE COURT: Okay. You have a constitutional right to do that and that is fine. That will be good. I do think -- I'm just going to make a suggestion to you and you don't have to -- counsel, it seems to most of us that it would look a little odd to swear him once he's here in front of the jury.
>
> MR. THORSEN: Okay.
>
> THE COURT: If we swear him before he goes – before the jury comes in, for all the jury would know, we had had some kind of hearing and he was - I can say he has previously been sworn. And that way it would look more normal to have him on the stand rather than have that -- him be the only person who took the oath at the stand. That's just -- I'll do it any way that you want to do that, but we talked about that and thought that would look a little bit odd. But that's up to you. Think about it for a minute.
>
> MR. THORSEN: I can see the logic of your suggestion and I'll accept your suggestion.

>    THE COURT: Okay.
>
>    MR. THORSEN: So –
>
>    THE COURT: That's what we'll do. Because that way I can say, you know, members of the jury, he's been previously sworn. And as far as they know -- they know we're out here having a hearing. They just don't know what it's about.
>
>    MR. THORSEN: Very good. I appreciate the assistance.
>
>    THE COURT: Okay.

Id. at 385-86. Thus, it was not ineffective for Mr. Thorsen to agree to a procedure which, on its face, protected defendant from being perceived as a person in custody when he testified from the stand.

### c. Conclusion

Not only does the record reveal that Mr. Thorsen provided effective representation, petitioner has failed to demonstrate a reasonable probability that the jury would have acquitted him if he had not worn leg restraints and had he been able to be sworn in front of the jury. The evidence the jury heard in support of the counts of conviction was both compelling and overwhelming: the two store employees identified petitioner as the robber who had robbed them at gun point, Hallman, Trial Transcript (#86) at 50-62 & 83-89; the police officer from whom petitioner had fled identified petitioner, id. at 101; and the jury heard jail recordings wherein petitioner discussed having a gun when confronted by the police. Hallman, Trial Transcript (#87) at 374-78. Indeed, petitioner admitted on direct that he went into the store and left with money. Id. at 389. He denied that he had a gun. Id. at 397. He testified that he believed the police were out to get him, id., and that he was not going to accept responsibility like had done in his previous

armed robberies, because he would "be looking at 30 years to life behind a couple hundred dollars where everybody play a part in the incident, you know, I just couldn't -- I couldn't see myself doing that." Id. at 398. Apparently, petitioner's theory was that he should not be facing such serious charges and time where he believed the store employees were in on the robbery. Id. As to his theory that he should not be responsible for the gun charge, he testified "Yeah. I had a gun, but I didn't have that gun. That's my whole issue. I didn't have that gun and I felt that they was taking advantage." Id. at 398. Thus, the evidence was overwhelming that petitioner robbed the O'Reilly Auto Parts Store at gunpoint, with petitioner's testimony corroborating for the most part the evidence put on by the government. Thus, petitioner has failed to show a reasonable probability that the jury would have acquitted him but for the alleged errors of counsel.

### 3. Counsel Provided Effective Representation at Sentencing

It was not ineffective for counsel to fail to challenge petitioner's prior North Carolina state-court conviction for common law robbery at sentencing under a theory that such conviction was not a crime of violence under § 4B1.2(a). Indeed, Johnson, supra, upon which petitioner relies, was not decided until nearly two years after defendant was sentenced.

The Fourth Circuit has held that "attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law." Konahrens v. Evatt, 66 F.3d 1350, 1360 (4th Cir. 1995). An attorney cannot be held to provide deficient representation for failing to anticipate Johnson. Locklear v. United States, No. 7:11-CR-00067-F-1, 2015 WL 9200439, at *3 (E.D.N.C. Dec. 16, 2015) (attorney "did not provide deficient performance by failing to anticipate the change of law brought about with Johnson."). As discussed above, Mr. Thorsen provided very effective representation at sentencing, filed objections to the PSR, and ultimately secured for petitioner a

below guidelines sentence. Finally, petitioner has not shown that the outcome of the sentencing proceeding would have been different had counsel objected to use of the common law robbery conviction, as is discussed in greater detail infra.

### B. Unlawful Sentence Based on Unlawful Reliance on Common Law Robbery as a Predicate Crime of Violence

In his final contention, petitioner argues that the court finding that he was a career offender and the sentence this court imposed is unlawful inasmuch as his conviction for common law robbery does not qualify as a predicate offense in light of Johnson. In response, the government argues that such claim is procedurally barred and that Johnson is not retroactively applicable to the sentencing guidelines in cases on collateral review.

#### 1. Procedurally Barred

Because this claim was not first raised on direct review, it is subject to a procedural bar on collateral review. United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010). To overcome that bar, petitioner must first show cause for failure to raise it on appeal and then show actual prejudice, neither of which can be demonstrated in this case. Bousley v. United States, 523 U.S. 614, 623 (1998) (rejecting arguments that section 2255 movant demonstrated cause for failure to raise argument based on a new Supreme Court holding issued after his case became final); Whiteside v. United States, 775 F.3d 180, 185 (4th Cir. 2014) (*en banc*) (noting that "alleged futility cannot serve as 'cause' for a procedural default in the context of collateral review"). Thus, having failed to raise such claim earlier, petitioner cannot raise it for the first time on collateral review.

#### 2. Johnson is Not Retroactive

It appears to be undisputed that the decision announced in Johnson is a new rule of law, and for petitioner to benefit from such decision, it would have to be retroactively applicable to

cases on collateral review. When the Supreme Court announces a new rule of constitutional law, "that rule applies to all criminal cases still pending on direct review." Schriro v. Summerlin, 542 U.S. 348, 351 (2004) (citing Griffith v. Kentucky, 479 U.S. 314, 328 (1987)). Whether the new rule of law can be applied to cases such as this one, which is on collateral review, pivots on whether the decision was substantive or procedural. A new rule of law applies to cases on collateral review "only in limited circumstances." Id. If the new rule is "substantive," then it applies retroactively. Id. In making a determination of whether a new rule is substantive, the Schriro Court held that "[a] rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes," 542 U.S. at 353, and that "[a] decision that modifies the elements of an offense is normally substantive rather than procedural," id. at 354, and that "[i]n contrast, rules that regulate only the manner of determining the defendant's culpability are procedural." Id. at 353.

It appears to the court that the decision announced in Johnson, when applied to the advisory sentencing guidelines as petitioner suggests here, is a procedural rather than a substantive rule. Its effect on the definition of "crime of violence" under § 4B1.2(a)(1)(2) of the Guidelines did not "narrow the scope of a criminal statue by interpreting its terms" or "place particular conduct or persons covered by the statute beyond the State's power to punish." Schriro, 542 U.S. at 352. Because failure to calculate a correct guidelines range is a procedural error, Peugh v. United States, ___ U.S. ___, 133 S. Ct. 2072, 2080 (2013), the decision in Johnson when applied to calculating a sentence under the Guidelines is a procedural rule.

### 3. Common Law Robbery is a Crime of Violence

Even if this court is wrong and Johnson is retroactively applicable to claims of sentencing error on collateral review, treating a North Carolina conviction for common law robbery as a crime

of violence is not contrary to Johnson as reliance on the residual clause of the ACCA is unnecessary for such a determination.

Petitioner's North Carolina common law robbery conviction is a "violent felony" within the meaning of the Armed Career Criminal Act ("ACCA") under the portion of the definition known as the "'force clause'—which covers crimes that have 'as an element the use, attempted use, or threatened use of physical force against the person of another,'" United States v. Shell, 789 F.3d 335, 341 (4th Cir. 2015); United States v. Presley, 52 F.3d 64, 69 (4th Cir. 1995). In Pressley, the Fourth Circuit held that the "common law definition of robbery ... defined as the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation," and that "violence is the use of force. Intimidation is the threat of the use of force." Id. In United States v. Bowden, 975 F.2d 1080, 1082 (4th Cir. 1992), the appellate court also held that "common-law robbery plainly has as an element the use, attempted use, or threatened use of physical force against the person of another. Moreover, in Carter v. United States, 530 U.S. 255, 275 (2000), Justice Ginsburg observed in a dissent that "[a]t common law, robbery meant larceny plus force, violence, or putting in fear." Finally, to the extent this court's decision in Lewis v. United States, 2015 WL 4425676 (W.D.N.C. July 17, 2015) is not consistent with this determination, that determination is no longer good law as it was premised on a premature concession by the government that common law robbery no longer applied in light of Johnson. The government has admitted that its concessions were flatly wrong. Thus, even if Johnson is retroactively applicable and no procedural bar exist, petitioner's conviction for common law robbery was properly considered a predicate offense under the "force clause" at sentencing.

As to his second qualifying offense, conspiring to commit armed robbery, that conviction

also qualified as a predicate offense, even after Johnson. First, the offense of armed robbery is (as it must be) a crime of violence. See Hunter v. United States, No. 3:15-CV-333 (W.D.N.C. Jan. 5, 2016) ("Under the Guidelines, armed robbery is an enumerated crime of violence, thus there is no vagueness issue" under Johnson). Second, the commentary to § 4B1.2 of the Guidelines states that conspiracy to commit armed robbery is a crime of violence for purposes of the career-offender designation. The second paragraph of that comment defines "[c]rime of violence" to include "robbery." U.S.S.G. § 4B1.2 cmt. n.1. The first paragraph defines the term also to include the offense of "conspiring" to commit crimes of violence. Id. Finally, the United States Sentencing Commission recently adopted an amendment to the definition of crime of violence, effective August 16, 2016, that confirms that it understands that conspiracies to commit robbery remain violent felonies in the light of Johnson. United States Sentencing Commission, *Amendment to the Sentencing Guidelines* (Preliminary) (Jan. 8, 2016). Thus, petitioner is entitled to no relief.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the government's Motion to Dismiss (#7) is **GRANTED** and the Petition is **DISMISSED** with prejudice.

**Denial of Certificate of Appealability as to Contention I**

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this court declines to issue a certificate of appealability on his claim of ineffective assistance of counsel as petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484–85 (2000) (in order to satisfy § 2253(c) when court denies relief on procedural grounds, a petitioner must demonstrate both that the dispositive procedural ruling is debatable, and that the petition states a debatable claim of the denial of a constitutional right).

### Granting of Certificate of Appealability as to Contention II

The court grants a certificate of appealability on petitioner's second contention, to wit, that his sentence was unlawfully imposed because Common Law Robbery is not a crime of violence under Johnson. The court finds that under § 2253(c), reasonable jurists could find this court's assessment of the constitutional claim debatable.

Signed: February 12, 2016



Max O. Cogburn Jr
United States District Judge